Benjamin Hopson II

Gelbooru/Gelcom , BlueType LLC

    Plaintiff,

v.

Google, LLC, a Delware LLC, and Does 1-2,

    Defendant(s).

DOC NO
REC'D/FILED
2021 MAY 12 AM 9:32
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

**21 CV 320 WMC**

Complaint for Violations of:

1. Modifying Website Content

2. DMCA Title II Safe Harbor Provisions

3. Declaratory and Injunctive Relief

1

Plaintiff ("Gelbooru") brings this lawsuit against Google, LLC ("Google") for serious and continuing violations of the Digital Millennium Copyright Act. Since November 3rd, 2013, Google has used it's power in the online search industry to penalize our websites and operators in their search index, delist sites with no course of action available, short of lawsuit for the end user, and also push their personal moral values onto everyone. With this lawsuit, Gelbooru seeks to stop Google from further abuse of the DMCA process, to gain more transparency and documentation into the incidents, to stop censorship of search terms, delisting of links, and stop these unfair acts against other websites and users.

## JURISDICTION AND VENUE

This court has jursdiction as Google has offices and conducts business in the state of Wisconsin.

This court has personal jurisdiction over Google. Google owns a physical location and employs in the state of Wisconsin and in this judicial district, and is subject to general personal jurisdiction throughout this State.

Venue is proper in this District **28 U.S.C. §§ 1391(b) (1)** , **28 U.S.C. §§ 1391(d)**

## PARTIES

Plaintiff Gelbooru, is a Wisconsin based LLC ("BlueType, LLC") located in Janesville, Wisconsin.

Defendant Google is a Delaware LLC with a place of business located in Madison, Wisconsin. Google regularly conducts business from this location, and this judicial district.

The names and capacities, whether individual, corporate, associate or otherwise of **Does 1 and 2**, inclusive, are presently unknown to Plantiff and for that reason, they are sued by fictious names. Plaintiff believes and alleges that each of the Doe defendants are in some way responsible for violations of the law and injuries and harm caused as alleged herein. If and when appropriate, Plaintiff will seek additional lawsuits, or ammend this complaint when the true names and capacities of said defendants are known.

2

# **FACTS**

### A. Gelbooru's background

1.     Gelbooru is a search engine of Japanese related animations and images. Users are able to search, upload, comment and more, on the site. Searching is the primary use and drive to this property.

2.     Gelbooru has spent over thirteen years in the industry.

3.     Google is aware of content on Gelbooru's website ("https://gelbooru.com" ), and has received multiple communications from Plantiff via their Google Groups platform, legal team, and email in regard to this matter, all of which have been ignored or brushed aside entirely.

### B. Google Communications

1.     Many communications were made via email, post, Google's DMCA counter-notice forms, and through outside council. No responses of any substance were made by Google.

2.     Google search dominates the search market, dominates the web browser industry ("Chrome") with over 92% of search traffic going through Google's search, and over 50% of the United States in Chrome adoption.

### C. DMCA

1.     Congress drafted the DMCA laws as a way for copyright owners and service providers to sort out issues together to fight existing and future forms of infringement of copyrights. It also gave service providers exemption from liablity because of infringement of copyright by its customers through a notice and takedown procedure.

In a hypothetical: a user commits an act of copyright infringement, and the copyright holder can send a notice of infringement linking to said infringing material to the service provider, who then disables access to the allegedly infringing material. The service provider

3

immediately forwards the claim to the user and the end user has the option to file a counter claim stating that the material was taken down mistakenly. The service provider receives the claim and forwards it on to the original complaintant. After ten business days the material in the counter claim is to be restored in full if no lawsuit is filed against the alleged infringer.

## COUNT ONE

### (Modifying Website Content)

1.  In addition to blatant disregard of the DMCA takedown process, Google has taken to modifying how the website is to be displayed to end users in Chrome, showing notices that would scare the average user into thinking something is malicious on Plantiff's websites and automatically disabling site content javascripts, without authorization, which allowed the circumventing of viewing controls located on Plantiff's sites. [ChromeError.png]

2.  Google's actions are systematic and are damaging to the reputation of Plantiff's business. The delisting of content from search engine, filtering of results, refusal to accept counter DMCA claims, refusal to answer any communication via email or post from lawyers, refusal to answer emails directed at legal, or concerns presented via online web forms. The disabling of JavaScript also negatively impacted revenue greatly and caused interference with business contracts. Google's market share for Chrome is over 69% according to StatCounter September 2019.

## COUNT TWO

### (Digital Millenium Safe Harbor Provisions)

1.  Failure to handle counter claims correctly should exempt Google from being able to claim they have no liability as the onus was on them to restore the disputed content and forward the counter claim. They refused to do so multiple times as documented and have not, in some cases, restored content that have been in dispute, that has been in their review, for over five years.

2.     Google's actions were taken with oppression, fraud, and/or malice, effectuated both through Google-designed algorithms and through Google employees and agents (e.g., manual human review of the counter claims). Google articulated a pretextual reason to disable access to the site, indefinitely, which was not supported by any factual evidence. This caused a drop in website traffic by over 100k unique visitors daily during a period where growth was being shown at a rate of 5-15% per month, setting Plantiff back years of growth and negatively impacting expansion plans.

## COUNT THREE

### (Declaratory and Injunctive Relief)

1.     A controversy exists between Plantiff and Google as to whether Google's policies and procedures, and their application of, violate the DMCA counter notice provisions. The correct interpretation as is worded and intended is that Google is to accept any counter claim it is to receive and forward these onto the original complaintent and restore links to the search index that have been referenced in the counter claim within ten business days. Google does not do this and does not accept every counter claim made with no legal basis for being able to do so.

2.     Another controversy exists between Plantiff and Google as to whether Google's forwarding of DMCA notices to Plantiff should be redacted of sender's contact information. Plantiff believes that being able to contact the original notice sender of the claims being made against them should be a given ability, however Google does not.

2.     More controversy exists where Plantiff believes that Google has given up their Safe Harbor Provisions of not being liable by failing to forward counter claim notices to senders and restoring content within ten days by willfully rejecting the counter claims made.

*No liability:*

**17 U.S. Code § 512 G(1)**

*Exceptions:*

5

**17 U.S. Code § 512 G(2)(B)**

**17 U.S. Code § 512 G(2)(C)**

4.      Controversy exists between Plantiff and Google as to whether results presented in the search engine should be filtered without a valid court order from the Supreme Court of the United States.

5.      Unless the court issues a declaration, the parties will not know whether Google's stance in handling counter notification claims comply with the law and there will continue to be disputes and controversy surrounding the policies and procedures of Google's making.

6.      Unless the court issues an appropriate injunction, Google's behavior will continue, harming both Plantiff and other webmasters, general public and businesses, by putting their interests and motivations above the law.

## **PRAYER FOR RELIEF**

Plantiff prays for relief as hereinafter set forth below:

1.      For a declaratory judgement that Google has violated DMCA provisions regarding counterclaim notification processing, both facially and as appliied;

2.      For an injunction requring Google to (i) cease and desist processing DMCA notices targeting these urls in the future, now and forever, and (ii) from censoring or restricting or filtering content of the Plantiff's web properties, from their search engine, or any other medium, without a valid court order within the jurisdiction of the United States of America, and only to apply required filtering at the State level of which the order was granted;

3.      For compensatory, special and statutory damages in an amount to be shown at trial;

4.      For punative damages and exemplary damages in an amount to be shown at trial;

5.      for restitution of financial losses or harm caused by Google's conduct and in an

amount to be shown in trial;

6. For attorney's fees and cost of suit;

7. For prejudgement and post-judgement interest; and

8. For any and all further relief that the Court deems just and proper.

Dated: December 12, 2019

                                                      Respectfully submitted,

                                                      Benjamin Hopson II
                                                      (Owner, BlueType LLC)